IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

GERARD DAVID McCREE,JR.,#203840,:

     Plaintiff,               :

vs.                      : CIVIL ACTION 15-00249-CG-B

GWENDOLYN GIVENS, *et al.,*    :

     Defendants.        :

## REPORT AND RECOMMENDATION

This § 1983 action, filed by Gerard David McCree, Jr., an Alabama prison inmate proceeding *pro se* and seeking leave to proceed *in forma pauperis*,[1] was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R) for appropriate action. During the screening of the Complaint, the Court discovered that this action is subject to the provisions of 28 U.S.C. § 1915(g). Accordingly, it is recommended that this action be dismissed without prejudice under 28 U.S.C. § 1915(g) for the reasons noted below.

**I.     Section 1915(g) and Plaintiff's Qualifying Prior Actions.**

---

[1] By separate order, the Court is rescinding its prior Order granting McCree leave to proceed *in forma pauperis* and returning the $15.63 partial filing fee to him. (Doc. 4).

Section 1915(g) provides:

> In no event shall a prisoner
> bring a civil action or appeal a
> judgment in a civil action or
> proceeding under this section [28
> U.S.C. § 1915] if the prisoner
> has, on 3 or more prior occasions,
> while incarcerated or detained in
> any facility, brought an action or
> appeal in a court of the United
> States that was dismissed on the
> grounds that it is frivolous,
> malicious, or fails to state a
> claim upon which relief may be
> granted, unless the prisoner is
> under imminent danger of serious
> physical injury.

The purpose of this section is to curb abusive prisoner litigation by requiring a prisoner who has had three actions or appeals dismissed as meritless to pay the full filing fee when his next action is filed. Dupree v. Palmer, 284 F.3d 1234, 1236 (11th Cir. 2002). "The only exception to section 1915(g) is if the frequent filer prisoner is 'under imminent danger of serious physical injury.'" Rivera v. Allin, 144 F.3d 719, 723 (11th Cir. 1998), overruled on other grounds by Jones v. Bock, 549 U.S. 199, 215-16 (2007).

After reviewing the records of the United States District Courts for the Southern, Middle, and Northern Districts of Alabama, the Court discovered that at least three of McCree's prior actions or appeals were dismissed

as frivolous, malicious, or for failure to state a claim upon which relief can be granted, namely, McCree v. Colbert, CA 03-0022-CG-C (S.D. Ala. Sept. 12, 2003); McCree v. Marshall, CA 03-0774-ID-SRW (M.D. Ala. July 24, 2003) (summary judgment granted for defendants), *appeal dismissed as frivolous,* (11th Cir. Mar. 30, 2006); and McCree v. Jones, 07-0280-KOB-JEO (N.D. Ala. May 9, 2007).[2]   Thus, McCree has "three strikes," thereby bringing this action within the scope of 28 U.S.C. § 1915(g).

In order to avoid the dismissal of the present action under § 1915(g), McCree must satisfy § 1915(g)'s exception, which requires that he show that he was "under imminent danger of serious physical injury" at the time he filed his Complaint.  Adbul-Akbar v. McKelvie, 239 F.3d 307, 315 (3d

---

[2]   In completing the form complaint in this action, McCree was less than forthcoming  in providing information about his prior litigation history. While he disclosed that he filed prior lawsuits relating to his imprisonment and that there was a dismissal for failure to state a claim, he does not provide specific information about his cases, and the grounds for dismissal.  However, the Court's decision in McCree v. Myers, CA No. 12-00573-CG-M (S.D. Ala. 2013), which was dismissed pursuant to 28 U.S.C. § 1915(g), clearly placed McCree on notice that three of his prior cases and appeals counted as strikes under 28 U.S.C. § 1915(g).  Furthermore, in his instant petition, McCree includes language indicating that the three strikes provision does not apply when a prisoner is in imminent danger of serious physical injury; thus, in filing this action, it appears that he understands that he must satisfy § 1915(g)'s exception in order to proceed with this action without the prepayment of fees.  (Doc. 1 at 6).

Cir. 2001) ("By using the term 'imminent,' Congress indicated that it wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those harms that had already occurred."), cert. denied, 533 U.S. 953 (2001); Brown v. Johnson, 387 F.3d 1344, 1349 (11th Cir. 2004) ("a prisoner must allege a present imminent danger, as opposed to a past danger, to proceed under section 1915(g)"); Medberry v. Butler, 185 F.3d 1189, 1193 (11th Cir. 1999) (the imminent danger of serious physical injury must be faced at the time the complaint is filed, not at a prior time).

## II. Analysis.

### A. Complaint. (Doc. 1).

In reviewing the allegations in McCree's Complaint (Doc. 1), the Court does not discern any claim showing that McCree was "under imminent danger of serious physical injury" at the time he filed the Complaint. McCree complains about Holman Correctional Facility's ("Holman") segregation cells being "risky" because hot electrical wires hang from the "roof" (which the Court interprets to be the ceiling) near a working water system, which "could [be] set off at anytime and cause death." (Doc. 1 at 6, 9). He also avers that inmates have asked to be moved from those cells, but when they are moved, other inmates are

moved into them.  (Id.).  McCree asserts that on April 15, 2015, he was moved into cell K-64 after another inmate's request to be moved from the cell because it was without lights was granted.  (Id. at 5, 8, 12).  Then, McCree made the same request to be moved, but the "Defendants have not responded reasonably" to his requests.  (Id. at 8).  McCree seeks to be moved to a cell that is safe, which does not have an electrical wire hanging from the ceiling of the cell.  (Id.).

According to McCree, inmates use the lights in their segregation cells to charge their cell phones, which they purchase from guards.  (Id.).  McCree avers that inmates remove the covers from the light in the segregation cell, and then cut the live electrical wires so that they can place a charger on the wires.  (Id. at 7-8).  McCree has included with his complaint a diagram, that he  purportedly drew of the interior of cell M-30, as opposed to cell K-64, which is the cell that many of McCree's complaints are based on.  McCree alleges that over 100 of the 200 cells in the segregation unit are in this condition.  (Id. at 11).  McCree indicate that prior to his incarceration in cell K-64, he was incarcerated in cells M-30 and M-25.  (Id. at 5).  Nevertheless, his diagram purports to reflect the position of the wires hanging from the ceiling and a water

source in the ceiling, which are separate. (Id. at 11). The diagram does not include any measurements nor is the water described. Based on a number of prisoner cases arising out of the Holman facility on the Court's docket, the Court takes judicial notice of the fact that at the Holman facility, showers are not located in the segregation cells but are instead located in a separate area for showering. Key v. Kimbrel, CA 13-371-CG-M, 2014 WL 4986752, at *1 (S.D. Ala. 2014) (unpublished); Allen v. Moody, CA No. 08-00227-WS-B, 2010 WL 3338932, at *1 (S.D. Ala. 2010) (unpublished).[3] And, McCree does not allege that a shower is located in his cell.

For relief, McCree requests a preliminary and permanent injunction directing Holman officials to close down the unsafe cells in Holman's segregation unit because they are "unsafe," "overcrowded," and "harsh." (Id. at 9, 14).

Realizing that § 1915(g) applies to him, McCree argues that he is facing serious injury or even death and that § 1915(g)'s exception contemplates the risk of future injury. (Id. at 6). To this end, McCree makes vague and conclusory

---

[3]    The Court takes judicial notice of its records. Nguyen v. United States, 556 F.3d 1244, 1259 n.7 (11th Cir. 2009).

statements about Eighth Amendment law and cases without connecting specific facts to these legal references. (Id. at 6-7).

In order to satisfy the § 1915(g) exception, "the issue is whether his complaint, as a whole, alleges imminent danger of serious physical injury." Brown, 387 F.3d at 1350. A plaintiff "must allege and provide specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury, and vague allegations of harm and unspecific references to injury are insufficient." Ball v. Allen, CA No. 06-0496-CG-M, 2007 WL 484547, at *1 (S.D. Ala. Feb. 8, 2007) (unpublished) (citations and quotation marks omitted) (Granade, C.J.). Furthermore, the allegations must demonstrate that at the time the complaint was filed, the danger existed. Id. at *2.

In the present action, McCree's Complaint is devoid of allegations of any injury that he has sustained as a result of the exposed wires and the dormant water source. With regard to the potential for future injury from the combined sources, his allegations lack information showing the probability of injury occurring and the immediacy of that injury and its seriousness. That is, he does not explain

whether the wires from the ceiling are within his reach, or whether there is any need for him to touch either the wires or the ceiling. Nor does he explain how the water and hot wires could plausibly connect to possibly cause him injury. More to the point, McCree's allegations are vague and not sufficiently specific to demonstrate that he was in imminent danger of serious physical injury at the time of the filing of his Complaint. Brown, 387 F.3d at 1349 (reviewing cases addressing the serious physical injury exception and noting in Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir. 2003), the prisoner's allegations of being forced to work in inclement weather so defendants could kill him was found to be conclusory and did not satisfy § 1915(g)'s exception); Moten v. Adams, No. 1:06-cv-924-AWJ-MJS, 2012 WL 2529204, at *2 (E.D. Cal. Jan. 25, 2011) (holding the plaintiff failed to show imminent danger of serious physical injury because he failed to show how the heat was an immediate threat to him)(unpublished); Ball, 2007 WL 484547 at *2-3 (holding that allegations of unsanitary showers, food service, and containers were "an imminent danger to Plaintiff's health and well being[] [were] conclusory allegations[s] that merely demonstrate[d] 'that plaintiff is a seasoned vexatious litigant who has read 28 U.S.C. § 1915(g) and is manipulating it to serve

his ends.'")(citation omitted)(unpublished). Thus, the Court concludes that McCree has failed to show that he was "under imminent danger of serious physical injury" at the time he filed his Complaint.

**B.  Amended Complaint.**  (Doc. 5).

After filing his Complaint in May 2015, McCree, on August 10, 2015, filed a "Motion to Amend the 1983 Civil Action Filed by the Plaintiff on 06-25-15, The Complaint herein State[]s [the] Full Cause of this Motion as Follows" ("Amendment"). (Doc. 5).  In the Amendment, McCree states that he wants to "keep" all of the claims in his original Complaint.  (Id. at 1).  As for his new claims, McCree complains about being moved from the "unsafe cell K-48 to cell M-24" during the second week of July, 2015.[4]  (Id. at 1-2).  He contends that in cell K-48, hot electric wires were coming out of the cell's lights.  (Id. at 1).  And that in cell M-24, he did not have a working toilet or water system.  (Id. at 2).  According to McCree, the cell was 80 degrees and had human waste in the toilet when he arrived.  (Id.).  After two weeks of being unable to flush the toilet, on August 4, 2015, Officer McCant came with

---

[4]      Since this allegation, McCree has been moved to cell L-44, as reflected in the return address on his letter received by the Court on November 12, 2015.  (Doc. 6 at 2).

bags and cups for McCree to remove the waste into the bags with the cups.  (Id.).

McCree alleges that the "Defendants had actual understanding that the toilet[']s condition was not working and held inside, someone else[']s human waste."  (Id.). McCree further alleges that "being [held] in this cell with his own bodily waste without working toilet and water thereto is harmful in [it] deprives the plaintiff [of] his right to sanitary toilet housing."  (Id. at 3).  McCree also alleges that he "has been finding hard to get clean air, throwing up and suffering now and in the future from the ongoing acts in a way that is extreme or outrageous resulting in severe or extreme emotional distress."  (Id.).

McCree's remaining allegations in the amendment are vague and conclusory, that is, they contain legal language but do not provide any facts.  For example, McCree alleges that he is being held in a cell "that represents human cruelty by the Defendants who [are] responsible when both Defendants knew or should have known that they [were] acting illegally. . . . Both Defendants supervisor[]s directly participated in the violation when unreasonabl[]y know[]s that most of their 200 segregation cell[]s is badly not-in-condition to house human inmates in those cell[]s.[] [M]oreover the Defendant supervisor[]s learned of the

violation of the Plaintiff's rights but failed to do anything to fix the situation, and the defendants created a policy or custom allowing or encouraging the illegal acts." (Id. at 3). McCree also asserts a violation of his First Amendment rights and liberty interests, and he speculates about consequences of the alleged violations, e.g., emotional distress could cause him to be placed on medications with side effects that would affect his right to petition the government because it could affect his ability to communicate in his criminal case. (Id.). For relief, McCree requests damages. (Id.).

Instead of filing a new action, McCree filed the Amended Complaint based on cell K-48's exposed hot electrical wires and on cell M-24's lack of water and a working toilet. The one common condition of which McCree complains in both his original Complaint (cell K-64) and Amended Complaint (cell K-48) is the exposed hot, electric wires hanging from the ceiling in the two cells to which he was assigned. The lack of water and a properly functioning toilet is alleged to have occurred in only one cell, cell M-24. Nevertheless, McCree's allegations have the tenor of challenging the conditions of numerous cells in segregation, (although the faulty toilet condition is not mentioned in McCree's original Complaint). District

courts, however, are instructed to treat the complaint as a whole when determining if the complaint alleges an imminent danger of serious physical injury. <u>Brown</u>, 387 F.3d at 1350 (holding the amended complaint alleged an imminent danger of serious physical injury and should have been allowed pursuant to Fed.R.Civ.P. 15(a) even though the original complaint was subject to dismissal pursuant 28 U.S.C. § 1915(g)).

In seeking to come with the § 1915 (g) exception, it is incumbent on the plaintiff to allege "specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury," with respect to the danger existing at the time the complaint was filed. <u>Ball</u>, 2007 WL 484547, at *1-*2 (citations and quotation marks omitted). "The Eleventh Circuit has construed this exception to require specific allegations of present imminent danger that may result in serious physical harm. . . . General allegations that are not grounded in specific facts which indicate that serious physical injury is imminent are not sufficient to invoke the exception to § 1915(g)." <u>Id.</u> at *1 (citations and quotation marks omitted); <u>cf.</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S.Ct.

1937, 1951, 173 L.Ed.2d 868 (2009) (Conclusory allegations are not entitled to a presumption of truth).

Here, the only injury of which McCree complains in his Amended Complaint is "throwing up."  (Doc. 5 at 3).  McCree makes a single reference to "throwing up", and he does not provide any information about how he was affected by the vomiting or the frequency of the vomiting. Moreover, no information is offered about alternative means that were made available to him with respect to toilet usage and water access, e.g., access to both in the shower area. And, McCree does not allege that he signed up for sick call or was seen by medical personnel for his vomiting. Although the cell conditions described by McCree were poor, and "throwing up" is not a pleasant experience, an occasional bout of vomiting is a normal human occurrence. Alexander v. Tippah Cnty., Miss, 351 F.3d 626, 632 (11th Cir. 2003)(finding that vomiting from smelling raw sewage on the isolation cell's floor was a de minimis injury (if any) as there were no allegations that the experience warranted medical attention, was a symptom of a more serious condition, or had lasting effects), cert. denied, 541 U.S. 1012 (2004); Scott v. Sussex State Prison, No. CA.A.7:06CV000369, 2006 WL 1876963, at*3 (W.D. Va. 2006) (unpublished) (finding allegations of vomiting were

insufficient to state a serious injury because nausea could be attributed to stress or illness, not necessarily "sediment rust" in the water), aff'd, 207 F. App'x 267 (4th Cir. 2006); White v. Dawkins, No. 3:05CV50-01-MU, 2005 WL 2076447 (W.D.N.C. 2005) (unpublished) (finding the allegations, which included giving plaintiff antibiotics that caused him to vomit, did not demonstrate an imminent danger of serious physical injury).

Considering McCree's allegations, they do not suggest that he was in imminent danger of serious physical injury. Further, his allegations that he was held in a cell with an inoperable toilet containing waste that is "harmful [and] deprives [him of] his right to sanitary toilet housing," (Doc. 5 at 3), that this condition posed an unreasonable risk of serious harm to his health and safety and that the Defendants knew the condition "would result in a constitutional violation" or that it was "highly predictable that a constitutional violation would occur" (id.), are not sufficient to demonstrate an imminent danger of a future serious physical injury.[5]

---

[5]     The Court observes that there are other deficiencies in McCree's Complaint and Amended Complaint, which are not being addressed in light of the Court's finding that McCree has not satisfied the § 1915 (g) exception.  One significant deficiency worth noting arises from the fact that the sole Defendants named by McCree in this action are

Accordingly, the Court finds that the allegations in McCree's Amended Complaint are conclusory and vague, and they are lacking sufficient facts so much so that the Court cannot provide much of a liberal construction without venturing into the speculative. Moreover, they are replete with terms of legal art that are unsupported by facts. Whereas, it is McCree's burden to demonstrate that he was in imminent danger of serious physical injury at the time he filed his Complaint. Cf. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007)(allegations must show plausibility in order to state a claim); Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

Warden Gwendolyn Givens and Warden Meyers, whom McCree identifies as supervisors. (Doc. 1 at 5; Doc. 5 at 3). McCree's allegations against these Defendants are couched in terms used for describing the law concerning supervisor liability. For instance, McCree asserts that Defendants had an "actual understanding" before he was moved into the cell that the toilet was not working and contained someone else's waste (Doc. 5 at 2), "directly participated" in the violation by knowing most of the 200 segregation cells are not in the condition to house humans (id. at 3), "created a custom or policy of allowing or encouraging illegal acts" (id.), and failed to do anything to correct the situation after learning of the violations of his rights through complaints. (Id. at 2-3). McCree has offered no facts to support these conclusory allegations.

inference that the defendant is liable for the misconduct alleged."). Because McCree has failed to demonstrate that he was in imminent danger of serious physical injury when he filed his Complaint, this action is due to be dismissed without prejudice.  See White v. Colorado, 157 F.3d 1226, 1231-32 (10th Cir.) (denying the "imminent danger of serious physical injury" exception because the "Amended Petition [wa]s largely a collection of vague and utterly conclusory assertions" and the plaintiff never identified the serious physical injury that was imminent), cert. denied, 526 U.S. 1008 (1999); Skillern v. Paul, 202 F. App'x 343, 343 (11th Cir. 2006)(section 1915(g)'s exception was not satisfied when the plaintiff alleged that he *may* suffer a serious physical injury)(unpublished);[6] Smith v. Harris, No. 5:07cv27/RS, 2007 WL 710172, at *3 (N.D. Fla.2007) ("General allegations that are not grounded in specific facts which indicate that serious physical injury is imminent are not sufficient to invoke the exception to § 1915(g)."); Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir. 2003) (finding as conclusory, and thereby insufficient to support § 1915's exception, the general assertion that

---

[6]    "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11TH CIR. R. 36-2 (2005).

"defendants were trying to kill [plaintiff] by forcing him to work in extreme conditions despite his blood pressure condition").

## III.  Conclusion.

Because McCree cannot avail himself of § 1915(g)'s exception, and on account of his failure to pay the $400 filing fee at the time he filed this action, this action is due to be dismissed without prejudice. Dupree, 284 F.3d at 1236 (holding that an action must be dismissed without prejudice when an inmate who is subject to § 1915(g) does not "pay the filing fee at the time he *initiates* the suit"); Vanderberg v. Donaldson, 259 F.3d 1321, 1324 (11th Cir.) (holding that the filing fee paid must be paid by an inmate subject to § 1915(g) at the time an action is commenced), cert. denied, 535 U.S. 976 (2002). Therefore, it is recommended that this action be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P.

72(b); S.D. ALA. L.R. 72.4. The parties should note that *under Eleventh Circuit Rule 3-1,* "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this the **26th** day of **January, 2016.**

**/s/SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**